**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HAWA LATTISHAW, *et al.*,<br>*Plaintiffs*,<br>v.<br>DISTRICT OF COLUMBIA,<br>*Defendant*. | Civil Action No. 25 - 1968 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Hawa and Meygan Lattishaw brought this action against the District of Columbia to recover attorney's fees and costs incurred in administrative proceedings against the District of Columbia Public Schools ("DCPS") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and D.C. Code § 38-2571.03(7). ECF No. 1. After the parties were unable to settle their dispute without the court's intervention, the Lattishaws filed a motion seeking $158,775.58 in fees and costs. ECF No. 10. For the following reasons, the court grants the motion in part and denies it in part.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Hawa Lattishaw is the parent of Meygan Lattishaw, a student diagnosed with a learning disability that entitled her to educational services under the IDEA. ECF No. 1 ¶¶ 5-6. Hawa Lattishaw brought an administrative action on behalf of Meygan in February 2025. *Id.* ¶ 11; *see* ECF No. 10-1. The Lattishaws argued that DCPS had denied Meygan a free adequate public education ("FAPE") during the 2023-2024 and 2024-2025 school years due to substantive problems with her school placement, the implementation of her Individualized Education Plan

("IEP"), and DCPS's procedural failure to provide Hawa full access to Meygan's educational records. ECF No. 10-1, at 20-27.[1] As relief, the Lattishaws requested that the hearing officer declare that DCPS had denied Meygan a FAPE, conclude that their unilateral placement of Meygan in private school was warranted and order DCPS to reimburse them for Meygan's private-school tuition for both school years, direct DCPS to update Meygan's IEP, order DCPS to provide Meygan compensatory education, and declare that Meygan's private school was her current educational placement under the IDEA. *Id.* at 20.

A hearing officer made a final determination on May 28, 2025. *Id.* at 29. He noted that the Lattishaws had withdrawn their procedural claim after the first day of the hearing and that they had not put on any "evidence to support compensatory education relief." *Id.* at 32 & n.2. The hearing officer concluded that DCPS had violated the IDEA by denying Meygan a FAPE during the 2024-2025 school year, but not during the 2023-2024 school year. *Id.* at 43-50. He accordingly found that the Lattishaws had not "acted unreasonably" in unilaterally continuing Meygan's placement in a private school for the 2024-2025 school year. *Id.* at 52. The hearing officer ordered DCPS to reimburse the Lattishaws for the cost of "tuition and related expenses" for Meygan's attendance at the private school for the 2024-2025 school year but denied "[a]ll other relief requested by the [Lattishaws]." *Id.* at 53.

In June 2025, the Lattishaws filed this suit against the District seeking attorney's fees and costs. ECF No. 1. The parties engaged in settlement negotiations from September 2025 until January 2026, at which point they notified the court that they had been unable to reach a resolution. *See* ECF Nos. 7 to 9, 11, 13, 15. The Lattishaws filed a motion seeking $158,775.58 in attorney's

[1] When citing to ECF Nos. 10-1 and 10-2, the court uses the page numbers generated by CM/ECF rather than any internal pagination.

fees and costs, ECF No. 10, which they have since reduced to $158,738.18, *see* ECF No. 14, at 8. The District opposes the motion in part, contending that the Lattishaws are only entitled to $52,082.50 in fees and costs. ECF No. 12, at 16.

## II. LEGAL STANDARDS

### A. Attorney's Fees

In any action under the IDEA, a district court "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). "Courts follow a two-pronged inquiry to determine attorneys' fees under the IDEA by, first, determining if the party seeking fees is a 'prevailing party' and then determining what fees are 'reasonable.'" *Robinson v. District of Columbia*, 61 F. Supp. 3d 54, 58 (D.D.C. 2014) (quoting 20 U.S.C. § 1415(i)(3)(B)(i)(I)). To assess whether the requested fees are reasonable, the court must (1) "determine the 'number of hours reasonably expended in litigation,'" and (2) "set the 'reasonable hourly rate.'" *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (en banc)). The plaintiff bears the burden of proving the reasonableness of the hours expended and of the requested hourly rate, "and the opposing party remains 'free to rebut a fee claim.'" *Id.* (quoting *Covington v. District of Columbia*, 57 F. 3d 1101, 1107-08 (D.C. Cir. 1995)); *see Rawlings v. District of Columbia*, No. 24-CV-2122, 2025 WL 1432278, at *2 (D.D.C. May 19, 2025).

### B. Expert Fees

While the IDEA does not permit a prevailing party to recover fees for the use of expert witnesses in IDEA proceedings, *see Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S.

291, 300 (2006), the "court, in its discretion, may award reasonable expert witness fees as part of the costs to a prevailing party" under District of Columbia law in certain circumstances, D.C. Code § 38-2571.03(7)(A). An award of expert fees may not exceed $6,000, *see* D.C. Code § 38-2571.03(7)(B), and the prevailing party "bears the burden of establishing that the experts' rates are reasonable and 'based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished,'" *Wright v. District of Columbia*, No. 19-CV-2818, 2019 WL 4737699, at *6 (D.D.C. Sep. 28, 2019) (quoting D.C. Code § 38-2571.03(7)(B)).

## III. DISCUSSION

### A. Attorney's Fees

The District does not contest that the Lattishaws are the prevailing party and are thus entitled to attorney's fees under the IDEA. *See* ECF No. 12, at 3. Instead, the District argues that the number of hours expended, *id.* at 11-16, and requested hourly rate, *id.* at 4-11, are unreasonable. The court agrees with some of the District's arguments and reduces both the hours expended and the hourly rate.

#### 1. Reasonable hours expended

A plaintiff bears the initial burden in demonstrating the number of reasonable hours expended. *See Eley*, 793 F.3d at 100. "[D]etailed invoices that show how much time [the plaintiff's counsel] spent on specific tasks suffice to enable courts to independently determine the reasonableness of hours claimed." *Parks v. District of Columbia*, 895 F. Supp. 2d 124, 129 (D.D.C. 2012). "If a party satisfies this burden, the number of hours billed is presumed reasonable, and 'the burden [] shifts to the [opposing party] to rebut this presumption.'" *White v. District of*

*Columbia*, No. 24-CV-769, 2025 WL 2049220, at *1 (D.D.C. July 22, 2025) (second alteration in original) (quoting *Dobbins v. District of Columbia*, No. 16-CV-1789, 2017 WL 4417591, at *3 (D.D.C. Sep. 29, 2017)). A district court "shall reduce" the amount of fees awarded when the court finds that "the time spent and legal services furnished were excessive considering the nature of the action." 20 U.S.C. § 1415(i)(3)(F)(iii). "The court may, for example, reduce the fee award for inadequate billing judgment, for hours billed unrelated or unnecessary to the litigation, for statutorily non-reimbursable time, or for double-billing." *Joaquin v. District of Columbia*, 210 F. Supp. 3d 64, 72 (D.D.C. 2016) (citations omitted).

As an initial matter, the court finds that the hours billed by the Lattishaws' counsel are presumptively reasonable. The Lattishaws have provided a detailed invoice describing the nature of billed tasks and hours billed, *see* ECF No. 10-1, at 56-70, and the Lattishaws' attorneys attest that the invoice reflects accurate and contemporaneous records of their time billed, *see* ECF No. 10-2, at 2-3, 7, 11, 14-15. The District thus bears the burden of rebutting the Lattishaws' presumptively reasonable hours. The District argues that the Lattishaws' request for attorney's fees should be reduced on five different grounds. The court addresses each in turn:

*a. Fernando Roldan's practice prior to D.C. Bar admission*

First, the District seeks to cut attorney Fernando Roldan's hours for time billed before he was licensed to practice in the District. ECF No. 12, at 12. In particular, the District points out that Mr. Roldan was admitted to the D.C. Bar in July 2025 but billed 27 hours before then. *Id.* In response, the Lattishaws argue that Mr. Roldan was practicing under D.C. Court of Appeals Rule 49(c)(8)(A), which allows a person "who is not a D.C. Bar Member" to "provide legal services in the District of Columbia" for fewer than "365 days from the start of the practice if" he (i) has a pending application to the D.C. Bar, (ii) is admitted in another United States jurisdiction,

(iii) is supervised by a D.C. Bar member who agrees to be jointly responsible for the quality of the work, and (iv) provides notice of his bar status and supervision in all business documents. During the period in which Mr. Roldan worked on this case, he met these requirements: he was admitted to the Connecticut Bar, ECF No. 10-2, at 7; ECF No. 14-1 ¶ 2; he had submitted an application for D.C. Bar membership in October 2024, ECF No. 14-1 ¶ 4; his work on the case was supervised by a D.C. Bar member, *id.* ¶ 6; and he did not issue or transmit any business documents such that notice regarding his supervised practice status was required, *id.* ¶ 7. To be sure, the District is correct that "[c]ase law indicates that an attorney may not be awarded attorneys' fees for legal services rendered while unlicensed in the jurisdiction." ECF No. 12, at 12 (quoting *Agapito v. District of Columbia*, 477 F. Supp. 2d. 103, 112 (D.D.C 2007)). But in the very case on which the District relies, the court concluded that the plaintiffs *were* entitled to attorney's fees for the unlicensed attorney "who was in substantial compliance with Rule 49(c)(8)." *Agapito*, 477 F. Supp. 2d at 111; *see id.* at 118-19. The court thus concludes that the Lattishaws are entitled to recover fees for Mr. Roldan's 27 hours of practice supervised in accordance with Rule 49(c)(8).

*b. Excessive time preparing the due process complaint*

Second, the District argues that the Lattishaws' counsel "devoted excessive amounts of time to various tasks." ECF No. 12, at 12. Specifically, the District takes issue with the 70.67 hours billed for the preparation of the administrative due process complaint, *id.*, and suggests that "no more than 15 hours of time" should be recoverable, *id.* at 13. The District does not point to any cases in which a court identified a reasonable number of hours to spend on an IDEA due process complaint. Instead, it cites two non-IDEA cases in which courts deemed excessive the 24 hours and 18.4 hours that attorneys had spent preparing complaints under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. ECF No. 12, at 12 (first citing *Los Padres*

*ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 371 (D.D.C. 2025); then citing *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 158 (D.D.C. 2015)). The Lattishaws respond that neither of these cases is persuasive because preparing an IDEA complaint, unlike preparing a FOIA complaint, is a fact-intensive process. ECF No. 14, at 5-6. As the Lattishaws explain,"[s]tudents have different backgrounds and the IDEA applies in a very fact dependent, individualized way." *Id.* at 6. They accordingly argue that it takes time to understand and describe the "student's particular history in order to prepare the description of the nature of the problem." *Id.* (internal quotation marks omitted). The court agrees that the fact-intensive nature of an IDEA complaint may often require more preparation than a FOIA complaint. But it ultimately agrees with the District that the Lattishaws' counsel billed an excessive number of hours researching and preparing the complaint.

The court estimates that attorney Kiran Hassan spent roughly forty hours of "research and preparation for the due process complaint," ECF No. 10-1, at 59, and that Mr. Roldan also billed over twenty hours as "research and preparation for the due process complaint," *id.* at 62. *See id.* at 57-62. The attorneys describe "preparation" as including record review, consideration of the parent's concerns, discussion with an education advocate, and legal research. *Id.* at 59. Indeed, at least twenty of the hours billed went to pure "case law" or "statutory" research "into legal, academic, or other related issues in the case." *Id.* at 61; *see, e.g.*, *id.* at 57, 60-63. The Lattishaws' argument about the student-specific nature of IDEA litigation has little purchase where such a substantial period of time was spent solely on legal research, especially when Ms. Hassan is an experienced IDEA attorney and the Lattishaws do not contend that the legal issues in this case were unusually difficult. *See* ECF No. 14, at 6 (arguing instead that the complaint took extensive time because of the factual depth of Meygan's "decade in the school system" and "complex

educational needs"). Although the Lattishaws point out that "[n]o IDEA case is exactly like another, and a large amount of time is spent understanding a student's particular history in order to prepare the description of the nature of the problem," *id.* at 6 (internal quotation marks omitted), they do not explain why this case required such an unusual number of hours conducting legal research, *see* ECF No. 12, at 12 (explaining that "[t]he IDEA does not require much for a due process complaint; it must only contain the name of the child, the address of the residence of the child, the name of the school the child is attending, a description of the nature of the problem of the child, including facts relating to such problem, and a proposed resolution of the problem to the extent known and available to the party at the time"); *see also* 20 U.S.C. § 1415(b)(7)(A)(ii).

In contrast, attorneys from the same firm that represents the Lattishaws also prepared the due process complaint in *Rawlings v. District of Columbia*, No. 24-CV-2122, 2025 WL 1432278 (D.D.C. May 19, 2025). *See* Pls.' Mot. Att'y Fees Ex. 1, *Rawlings v. District of Columbia*, No. 24-CV-2122 (D.D.C. Jan. 3, 2025), ECF No. 7-1. In that complaint, counsel raised four distinct legal issues, including claims similar to those in the Lattishaws' case that DCPS had denied the student a FAPE across two different school years by failing to provide the parents with access to records, by failing to provide certain services, and by developing two inadequate IEPs. Pls.' Mot. Att'y Fees Ex. 1, at 14-19, *Rawlings*, No. 24-CV-2122 (D.D.C. Jan. 3, 2025), ECF No. 7-1. Here, counsel raised three distinct legal issues of similar complexity. *See* ECF No. 10-1, at 20-27. Yet the court's review of the invoice in *Rawlings* indicates that primary counsel spent roughly ten hours researching and drafting the due process complaint, with another five or so hours of research and review conducted by other attorneys. Pls.' Mot. Att'y Fees Ex. 1, at 54-81, *Rawlings*, No. 24-CV-2122, (D.D.C. Jan 3, 2025), ECF No. 7-1. To be sure, there may well be good reasons for variation in billing across different cases, even at the same firm. But the vast

discrepancy between the hours spent on the Lattishaws' complaint and the hours spent on the complaint in *Rawlings* underscores the court's conclusion that the time billed here was excessive. *See Bond ex rel. K.M. v. Friendship Pub. Charter Sch. Bd. of Trs.*, No. 23-CV-367, 2023 WL 8710370, at *3 (D.D.C. Dec. 18, 2023) (deeming "excessive" and reducing by 50% counsel's 28.9 hours spent preparing a 30-page IDEA due process complaint, "especially" because the "plaintiff's counsel copied many portions of the complaint directly from [the student's] educational record"); *see also Kelsey v. District of Columbia*, 219 F. Supp. 3d 197, 207 (D.D.C. 2016) (noting that the attorney spent 22.4 hours preparing an IDEA complaint and reducing 6.2 of those hours for other reasons).

The court agrees with the District that the 70.67 hours of generic entries centered on research and preparation is excessive absent a specific explanation about unusual complexities presented by this case. The court thus reduces the number of hours billed by Ms. Hassan and Mr. Roldan in preparing the complaint by 75%.

*c. Duplicative work, case reviews, and training time*

Third, the District proposes reducing hours for four "duplicate time entries" on which multiple attorneys performed the same work, three "vague entries related to case or file reviews," and a training that Ms. Hassan attended. ECF No. 12, at 13. The court disagrees with the District on the first two, but agrees on the third.

*Case meetings and peer review.* On August 23, 2024, attorneys Roberta Gambale and Kiran Hassan both billed a half-hour initial case meeting between the two attorneys "to go over information shared at intake and case strategy moving forward including [the] need for [a] Notice of Unilateral Placement." ECF No. 10-1, at 57. On September 25, 2024, they both billed a half-hour meeting "about [the] case status and moving forward with [the due process claim] given

parent's concerns." *Id.* at 60. In support of its argument for reduction, the District relies on a non-IDEA case in which the D.C. Circuit concluded that "unexplained duplication of work appear[ing] throughout the time records" was "excessive and redundant" and thus warranted a partial reduction, *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004). ECF No. 12, at 13 (citing *Role Models*, 353 F.3d at 972). But two half-hour case meetings between attorneys in advance of filing a complaint does not strike the court as duplicative, let alone excessive or redundant. Rather, courts in this district routinely deem compensable similar and even more time-consuming collaboration in IDEA litigation. *See, e.g.*, *Rawlings*, 2025 WL 1432278, at *5 (deeming appropriate similar meetings to ensure "compliance with the high standards" set by the IDEA and to accommodate the needs of the plaintiff's family (internal quotation marks and citation omitted)).

The District also challenges as duplicative Ms. Gambale's entries on February 25 and February 27, 2025. ECF No. 12, at 13. These entries amount to a total of 40 minutes that Ms. Gambale spent reviewing the due process complaint drafted by Ms. Hassan "to [e]nsure compliance with the high standards for complaints imposed by DCPS and the requirements of [the] IDEA." ECF No. 10-1, at 62-63. This limited review of a colleague's work is a far cry from the type of duplicative work that might warrant a reduction. *Cf. Role Models Am., Inc.*, 353 F.3d at 972 (deeming time billed duplicative where "on three separate occasions[,] two individuals . . . billed time for filing the same brief"). The District's suggestion that it is "redundant" for supervisory attorneys to review a draft flies in the face of standard litigation practice. ECF No. 12, at 11.

*Case review.* Although the District's one-sentence objection to three "vague entries related to case or file reviews" does not precisely identify which entries it challenges, *id.* at 13, the court

presumes that the District intends to challenge the twenty-minute case review meetings billed by Ms. Hassan and paralegal Heather Carter-Rimbach on August 30 and September 26, 2024, ECF No. 10-1, at 58, 60, and Ms. Hassan's ninety-minute "[m]onthly file review" on October 11, *id.* at 60. Similar to the case-coordination meetings between Ms. Gambale and Ms. Hassan, "case file review charges are compensable." *Rawlings*, 2025 WL 1432278, at *5 (collecting cases and holding that fifteen entries constituting case file review or case status meetings were compensable); *see* Mem. Op. at 6, *Dorsett v. District of Columbia*, No. 00-CV-212 (Sep. 13, 2000), ECF No. 26 (finding that "[b]i-weekly status reviews . . . evidence diligent legal representation, not unreasonable or excessive use of time, particularly when dealing with the challenges presented when litigating with the District of Columbia Public Schools"). The court sees nothing unreasonable about billing less than three hours for case review.

*Training time.* The District also seeks a reduction for a training that Ms. Hassan attended on November 11, 2024. ECF No. 12, at 13-14. The District argues that "it is not reasonable for an attorney to expect a paying client to pay for training time and so the District should not be required to subsidize Ms. Hassan's legal education." *Id.* Ms. Hassan reports in the invoice that she "attended training on unilateral placements and researched some of the case law regarding unilateral placements and how to establish denials of [a] FAPE in such cases." ECF No. 10-1, at 61. To be sure, the subject matter of that training relates to the Lattishaws' case, in which the Lattishaws unilaterally placed Meygan in a private school and sought to establish that the District had denied her a FAPE. *See* ECF No. 10-1, at 20-27. But while it may be reasonable for an attorney to bill time spent learning about an unfamiliar area of law, it strikes the court as unreasonable for an attorney who has "practiced special education law nearly exclusively since 2011," ECF No. 10, at 10, and has litigated over 100 cases, ECF No. 10-2, at 3, to bill her client

for a training about a core concept in IDEA law. *Cf. Blackman v. District of Columbia*, 56 F. Supp. 3d 19, 29 (D.D.C. 2014) (noting that while "even an expert in the field must keep up with the law in his or her area of practice," a court "might well be concerned if non-experts were being compensated from public funds for 'learning on the job'" (citation omitted)). And the Lattishaws do not even contest this challenge in their reply brief. *See generally* ECF No. 14. The court accordingly excludes the 3.5 hours that Ms. Hassan spent attending a training on a topic core to her claimed legal expertise.

*d. Resolution session*

Fourth, the District seeks reductions for time related to a resolution session. ECF No. 12, at 14. It is undisputed that the IDEA prohibits recovery for time spent on resolution sessions "conducted pursuant to [20 U.S.C. §] (f)(1)(B)(i)." 20 U.S.C. § 1415(i)(3)(D)(iii); *see Rawlings*, 2025 WL 1432278, at *6 (excluding entries preparing for resolution meeting and time spent discussing settlement offer); *Howard v. Achievement Preparatory Acad. Pub. Charter Sch.*, No. 15-CV-199, 2016 WL 1212409, at *14 (D.D.C. Mar. 8, 2016) (excluding time for "preparing for, scheduling, discussing, attending, and debriefing from the resolution session"). But of the four dates containing entries to which the District objects, two were not billed at all, *see* ECF No. 10-1 at 64 (listing "NO CHARGE" for time spent scheduling and attending settlement discussions on March 7and March 12, 2025), and the Lattishaws have agreed to withdraw the request for $37.40 associated with scheduling a resolution meeting on February 28, 2025, ECF No. 14, at 8.

That leaves the District's challenge to two entries totaling fifty minutes billed on March 18, 2025 when Ms. Hassan "reviewed an email from DCPS requesting a mediation" and "talked to the parent about [the] request." ECF No. 10-1, at 65. The District suggests that these entries relate to

the pre-hearing resolution session and are thus not compensable. ECF No. 12, at 14. But the resolution session in this case occurred on March 12, 2025, prior to the challenged entry. ECF No. 10-1 at 29-30. Mediation under the IDEA is governed by 20 U.S.C. § 1415(e), whereas the resolution sessions for which fee recovery are prohibited are governed by Section 1415(f)(1)(B). The District thus errs in asking the court to discount the fifty minutes billed on March 18, 2025 in which counsel engaged with the District's request for mediation.

*e. Reduction due to partial success*

Fifth, the District argues that the court should reduce the ultimate fee award by 40% because the Lattishaws prevailed only partially on their claims in the administrative proceeding. ECF No. 12, at 14-16. The Lattishaws do not dispute that they prevailed only in part, but they argue that a full fee award is still appropriate because they obtained "excellent results" and prevailed on one of two interrelated substantive claims. ECF No. 14, at 8-9. As a fallback, they argue that a 10% reduction would be warranted if the court deemed a reduction necessary. *Id.* at 9-10. The court concludes that a 30% reduction due to partial success is warranted.

The Supreme Court has explained that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "[O]n the other hand," if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole . . . may be an excessive amount," "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436.

"[N]o precise rule or formula" dictates how courts should account for partial success. *Id.* Typically, if a plaintiff's "claims share a common core of facts or are based on related legal

theories, '[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" *Harrell ex rel. J.W. v. District of Columbia*, No. 23-CV-3611, 2024 WL 3640033, at *5 (D.D.C. Aug. 2, 2024) (alteration in original) (quoting *Hensley*, 461 U.S. at 435). In many such cases, as here, counsel's invoice will not make clear which hours were spent preparing which claims. *See Daniel v. District of Columbia*, 174 F. Supp. 3d 532, 552 (D.D.C. 2016) (noting that the "plaintiffs' fee invoice would not equip the undersigned to sever hours devoted to particular claims even if that were desirable"); *Wilhite v. District of Columbia*, 110 F. Supp. 3d 77, 88 (D.D.C. 2015) (same). In these cases, "it is more appropriate to reduce the full award amount by taking a holistic approach that looks at the claims brought and the overall relief received." *Daniel*, 174 F. Supp. 3d at 552. "[O]nly when the unsuccessful claim is based on a different set of facts and a different legal theory [does] *Hensley* require[] that the fees pertaining to the unsuccessful claim be disallowed." *Medina v. District of Columbia*, 864 F. Supp. 2d 13, 17 (D.D.C. 2012).

As noted *supra* pp. 1-2, the Lattishaws winnowed their requests between their administrative complaint and the hearing. Specifically, the Lattishaws withdrew their claim about a procedural violation concerning Hawa's access to Meygan's records and provided no evidence at the hearing to support their claim for compensatory education. ECF No. 10-1, at 32 & n.2. Accordingly, the only two issues the hearing officer considered were (1) whether DCPS denied Meygan a FAPE for the 2023-2024 school year, such that her unilateral placement in a private school was justified and the Lattishaws were entitled to reimbursement; and (2) whether DCPS denied Meygan a FAPE for the 2024-2025 school year, such that her unilateral placement in private school was justified and the Lattishaws were entitled to reimbursement. *Id.* at 31. The hearing officer agreed with the Lattishaws that DCPS had denied Meygan a FAPE during the 2024-2025

school year and directed DCPS to reimburse the Lattishaws for Meygan's private school tuition for that school year only. *Id.* at 53.[2]

The District argues that a 40% reduction in fees is appropriate because the Lattishaws prevailed only on their claim as it concerned tuition reimbursement the 2024-2025 school year, having withdrawn their claim about a procedural violation, having abandoned their claim for compensatory education, and having lost on their claim for tuition reimbursement for the 2023-2024 school year. ECF No. 12, at 15-16. At the outset, the court does not find it appropriate to reduce fees based on issues—namely, the procedural violation and the request for compensatory education—that the Lattishaws listed in the complaint but did not ultimately pursue. It is commonplace for plaintiffs to list every plausible claim and request for relief in a complaint and later make strategic decisions about which issues to pursue as the case proceeds. Accordingly, the court will focus on the Lattishaws' partial success with respect to the primary relief requested in their complaint and addressed at the hearing: the requested reimbursement for Meygan's private school tuition for the 2023-2024 and 2024-2025 school years.

The hearing officer's determination that the Lattishaws failed to demonstrate a denial of a FAPE for the 2023-2024 school year significantly reduced the scope of their overall success because it meant that they could only obtain tuition reimbursement for the 2024-2025 school year. And even as to the claim on which the Lattishaws prevailed—the inappropriateness of the 2024-2025 IEP and resulting denial of a FAPE—the hearing officer found that DCPS had met its burden of persuasion in demonstrating that (1) Meygan could participate in special and elective

[2] Because Meygan would not be returning to the private school after the 2024-2025 school year, the hearing officer did not need to reach the Lattishaws' requests about updating her IEP. ECF No. 10-1, at 52 n.4.

classes in the general educational setting, ECF No. 10-1, at 46; (2) Meygan did not require occupational therapy services in the 2024 IEP, *id.* at 47; and (3) Meygan did not require speech and language services in the 2024 IEP, *id.* at 48. Rather, the hearing officer based his determination that the 2024 IEP was inappropriate solely on DCPS's failure "to include Social, Emotional, and Behavioral goals" and "to provide Behavior Support Services." *Id.* at 49. Few attorneys, or clients, would describe such results as "excellent" when they prevailed on only one of two distinct claims and received only half of the tuition reimbursement sought. *Hensley*, 461 U.S. at 435. The court thus rejects the Lattishaws' contention that no reduction is necessary and turns to the appropriate fee reduction.

As noted, the District requests a 40% overall reduction, ECF No. 12, at 16, while the Lattishaws argue that a 10% reduction would suffice, ECF No. 14, at 9-10. The Lattishaws point to three cases in this district where the court found that a reduction of 10 to 15% was appropriate. *See* ECF No. 14, at 9. In all three cases, the plaintiff won substantial relief and failed to obtain something ancillary or de minimis. First, in *Taylor v. District of Columbia*, 187 F. Supp. 3d 46 (D.D.C. 2016), the plaintiff argued that DCPS had denied the student a FAPE on four different theories, of which the hearing officer credited two. *Id.* at 55. The hearing officer awarded substantial relief, including compensatory education and full-time placement in a private school, but declined to award the "'wrap around' services" that the plaintiff sought, namely, "therapeutic transport, outside counseling, and therapeutic recreation." *Id.* at 55-56 (citation omitted). The court explained that because the plaintiff "prevailed on the most significant aspects of her claims but her relief was limited in comparison to the proceeding as a whole," a 10% reduction was appropriate. *Id.* at 56.

Next, in *Brown v. District of Columbia*, 80 F. Supp. 3d 90 (D.D.C. 2015), the plaintiff similarly presented four claims and "technically" lost on two. *Id.* at 101. But one of the "lost" claims was anomalous because the hearing officer appeared to deny the plaintiff's request for tuition reimbursement because the nonpublic school had accepted the plaintiff "without conditioning his attendance on an agreement that his parents would pay—a fortuity rather than a lack of merit of [the] [p]laintiff's claim." *Id.* The court reduced the total fee award by 10% despite the "two unsuccessful requests for relief, only one [of which] was substantive," because the plaintiff "prevailed on the most important aspects of his claims" and because of "the de minimis nature of his procedural loss." *Id.*

Finally, in *Platt v. District of Columbia*, 168 F. Supp. 3d 253 (D.D.C. 2016), the court concluded that a 15% reduction was appropriate where the plaintiff obtained "significant relief," including "hundreds of hours of compensatory education as well as the option of a full-time non-public placement," but did not prevail on her requests for a certain educational placement and "'wrap around' services," such as "therapeutic transport, individual and family counseling, medication management, and therapeutic recreation." *Id.* at 264-65; *see Burks v. District of Columbia*, No. 18-CV-2726, 2019 WL 2189488, at *10 (D.D.C. Apr. 6, 2019) (deeming appropriate a 10% reduction where the plaintiff's "substantial success"—"obtaining . . . additional assessments, a new IEP, a change in placement, and compensatory education"—significantly outweighed the fact that the hearing officer declined to order that DCPS change the student's placement to a nonpublic school), *report and recommendation adopted*, 2019 WL 2185371 (D.D.C. May 1, 2019).

On the other side of the ledger, the District points to two cases in which the court found a 50% fee reduction appropriate. *See* ECF No. 12, at 15. First, in *Harrell*, the plaintiff sought

(1) speech language therapy, (2) occupational therapy, and (3) a remedy for a procedural violation—the District's alleged failure to provide the parent an opportunity to participate in an IEP meeting regarding the student's need for a certain service. 2024 WL 3640033, at *1. The hearing officer found for the plaintiff on only the first issue and awarded compensatory education. *Id.* The court concluded that a 50% reduction was appropriate for that partial victory, primarily by looking to the number of issues on which the plaintiff had prevailed relative to the number of claims raised. *Id.* at *7 (collecting cases and explaining that the plaintiffs had "succeeded on one of three issues" and that "[c]ourts have reduced fees by 50% or more in similar circumstances").

Second, in *Davis v. District of Columbia*, No. 15-CV-1194, 2018 WL 6181736 (D.D.C. Nov. 27, 2018), the plaintiff the plaintiff sought (1) compensatory education, (2) an order reinstating her eligibility for special education, and (3) an order that DCPS fund or conduct further disability evaluations. *Id.* at *1. The court ruled against the plaintiff on the first issue, ordered a remand on the second issue, and ruled for the plaintiff on the third issue. *Id.* The hearing officer eventually ordered that DCPS fund or conduct additional disability assessments, but he did not find that DCPS had denied the student a FAPE, nor did he order compensatory education or reinstatement of eligibility for special education. *Id.* Evaluating the subsequent motion for fees, the court explained that "[o]btaining the additional evaluations" was "a significant form of relief" and that the plaintiff's "challenge to the hearing officer's conclusion that termination of those services was appropriate was meritorious enough to warrant a remand." *Id.* at *3. But the court acknowledged that the plaintiff was unsuccessful in demonstrating that the District had denied the plaintiff a FAPE or that the District was obligated to provide compensatory education. *Id.* In light of that "mixed bag" of results, the court determined that a 50% reduction was appropriate. *Id.*

The Lattishaws' case presents a "mixed bag" closer to *Harrell* or *Davis* than to *Taylor*, *Brown*, or *Platt*. In *Taylor*, the relief denied was nearly de minimis: the student was awarded compensatory education and placement in private school and denied only a few additional "wrap around" services. 187 F. Supp. 3d at 55-56 (internal quotation marks and citation omitted). In *Brown*, too, the court emphasized the "de minimis nature of [the plaintiff's] procedural loss" and found that the plaintiff "prevailed on the most important aspects of his claim." 80 F. Supp. 3d at 101. And in *Platt*, the court underscored that, although the plaintiff lost on five of eight legal issues and failed to obtain certain services, she "obtained significant relief" including "hundreds of hours of compensatory education as well as the option of a full-time non-public placement." 168 F. Supp. 3d at 264. Here, the Lattishaws' two substantive claims centered on their request for tuition reimbursement for the 2023-2024 and 2024-2025 school years. *See* ECF No. 10-1, at 20-25. The hearing officer denied half of the requested tuition—much more than a de minimis or tangential loss.

Nevertheless, the 50% reductions awarded in *Harrell* and *Davis* strike the court as unreasonably steep in this case. The court in *Harrell* placed a heavy emphasis on the number of issues on which the plaintiff prevailed, 2024 WL 3640033, at *7, whereas the Supreme Court has instructed district courts to focus on the "overall relief" sought and received, *Hensley*, 461 U.S. at 435. And the court in *Davis* described the plaintiff's results as "middling," as the plaintiff had obtained access to additional assessments but no actual compensatory education or additional services. 2018 WL 6181736, at *3. Although the Lattishaws did not receive all the relief they sought either, they did receive significant monetary compensation, which strikes the court as a more tangible form of success than the *Davis* plaintiff's access to additional disability assessments.

The court thus concludes that a 30% fee reduction is appropriate based on the Lattishaws' receipt of substantial relief—a finding that DCPS denied a FAPE and an order of tuition reimbursement for one year—relative to their overall litigation, which sought similar relief for two school years.

**2. Reasonable Hourly Rate**

The IDEA mandates that fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). "A fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the community." *Covington* 57 F.3d at 1107. The District challenges only the third element, arguing that the Lattishaws' proposed rates do not reflect prevailing market rates in the community. ECF No. 12, at 4-11.[3]

"Fee applicants in IDEA cases have relied on two separate, but inter-related, approaches to providing evidence of [the] prevailing market rate." *Reed v. District of Columbia*, 843 F.3d 517, 521 (D.C. Cir. 2016). They may either (1) demonstrate that IDEA cases fall within the bounds of "complex federal litigation," in which case the Fitzpatrick Matrix presumptively applies, or

[3] The District's decision not to challenge the first and second elements makes good sense. On the first element, the Lattishaws have established the rate that their attorneys "customarily charge[] clients," *Covington*, 57 F.3d at 1103, by providing an affidavit from attorney Robert W. Jones explaining that "[t]he hourly rates contained in the invoice are the rate at which the law firm of James E. Brown & Associates, PLLC, would regularly charge to those clients who would pay the firm directly, regardless of whether reimbursement is obtained," ECF No. 10-2, at 15. On the second element, the Lattishaws have demonstrated that the rate is reasonable in light of their "attorneys' skill, experience, and reputation," *Covington,* 57 F.3d at 1107, by providing statements and resumes for the attorneys and paralegals who worked on this matter, *see* ECF No. 10, at 10-12; ECF No. 10-2, at 2-15, 53-61.

(2) "establish the prevailing market rate by providing evidence of the fees charged, and received, by IDEA litigators." *Id.* (internal quotation marks omitted). Here, the Lattishaws principally argue that IDEA cases—whether as a category or this one in particular—are "complex federal litigation" warranting fees in accordance with the Fitzpatrick Matrix. ECF No. 10, at 7-10. In their reply brief, they also argue that the rates under the Fitzpatrick Matrix are what IDEA litigators charge and receive. ECF No. 14, at 3. The court is not persuaded by either argument.

*a. Complex federal litigation*

Courts in this district long used the *Laffey* Matrix "to reflect the prevailing market rate for 'complex federal litigation.'" *Reed*, 843 F. 3d at 519; *see Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 371-73 (D.D.C. 1983), *aff'd in part, rev'd in part*, 746 F.2d 4 (D.C. Cir. 1984). In recent years, however, courts in this district have instead applied the updated Fitzpatrick Matrix to "complex federal litigation," as the Lattishaws ask the court to apply here. *See White*, 2025 WL 2049220, at 3 & n.1 (internal quotation marks and citation omitted) (collecting cases); *see also J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 31-36 (D.D.C. 2023) (concluding that "the Fitzpatrick Matrix offers a superior measure of the prevailing market rate for complex federal litigation in the District as compared to the [inflation-adjusted] *Laffey* Matrix" because "the Fitzpatrick Matrix's underlying dataset has the clear benefit of being much more recent," derives from a transparent and large sample size, and offers increased granularity based on the experience level of a particular attorney). Because the Fitzpatrick Matrix applies only to "complex federal litigation," like the *Laffey* Matrix before it, "fee applicants have focused their efforts on attempting to demonstrate that IDEA cases fall within the bounds of [complex federal] litigation." *Reed*, 843 F.3d at 521.

The D.C. Circuit has recognized "that IDEA cases *sometimes* fall within a submarket characterized by below-*Laffey* rates." *DL v. District of Columbia*, 924 F.3d 585, 594 (D.C. Cir. 2019). Specifically, the Court explained that full *Laffey* Matrix rates are inappropriate in cases that "involve[] individual IDEA plaintiffs litigating non-complex cases primarily before an administrative body." *Id.* But the court "left open 'the possibility that future fee applicants may be able to demonstrate that IDEA cases are "complex federal litigation" to which the *Laffey* Matrix presumptively applies.'" *Id.* (first alteration in original) (quoting *Reed*, 843 F.3d at 525).

The Lattishaws argue that their case was "no less complex" than two other cases that courts in this district deemed complex. ECF No. 10, at 10 (first citing *J.T.*, 652 F. Supp. 3d 11; then citing *Merrick v. District of Columbia*, 316 F. Supp. 3d 498 (D.D.C. 2018)). The Lattishaws have also attached "a selection of [the] affidavits" considered in one of those two cases. ECF No. 10, at 9; *see* ECF No. 10-2, at 68-90. The court concludes that the Lattishaws have failed to establish that IDEA cases are categorically complex federal litigation or that their particular case was sufficiently complex to warrant rates under the Fitzpatrick Matrix.

The Lattishaws begin with *J.T.*, 652 F. Supp. 3d 11. That case is largely inapposite because the court there concluded that the District had conceded that the plaintiff's suit was "complex federal litigation." *Id.* at 29. The court found that the concession "obviated" the need for the "[n]ormal[] . . . assessment of whether [the] plaintiff has carried her burden of establishing that the relevant market is that of complex federal litigation, and then whether [the] defendant has rebutted that conclusion." *Id.* The court thus never considered whether the evidence submitted by the plaintiff was persuasive. *See id.* at 28-30 (describing the affidavits but not weighing their arguments or evidentiary value). Because the court did not conduct any "assessment of whether

[the] plaintiff ha[d] carried her burden," *J.T.* provides no persuasive authority as to whether the Lattishaws have carried *their* burden. *Id.* at 29.

Nonetheless, the Lattishaws have recycled a "selection" of three affidavits from attorneys who represented the student in *J.T.* ECF No. 10, at 9; *see* ECF No. 10-2, at 68-74 (Verified Statement of Diana M. Savit); *id.* at 76-85 (Verified Statement of Douglas Tyrka); *id.* at 87-90 (Verified Statement of Alana Hecht). But as another court recently put it: these affidavits "are functionally identical and insufficient for the same reasons." *White*, 2025 WL 2049220 at *4. All three declarants compared their experience litigating IDEA cases to litigating in other fields of complex litigation, namely employment discrimination and civil rights litigation. ECF No. 10-2, at 68-69 ¶¶ 3-6; *id.* at 78-79 ¶¶ 18-19; *id.* at 87 ¶¶ 4-5. They each concluded that IDEA litigation is categorically complex for two main reasons.

First, the declarants asserted that IDEA cases require "specialized non-legal knowledge." ECF No. 10-2, at 69 ¶ 7; *id.* at 79 ¶ 19; *id.* at 87 ¶ 5. But the D.C. Circuit has already rejected this argument. While the D.C. Circuit "appreciate[d] that attorneys who litigate IDEA cases may have 'specialized non-legal knowledge,'" it noted that the same was "true in a number of specialized fields" and deemed that fact "insufficient to demonstrate that IDEA cases involve complex litigation." *Reed*, 843 F.3d at 525; *see Easterling*, 2026 WL 923784, at *3-4 (rejecting the same arguments raised in the Hecht and Savit declarations); *White*, 2025 WL 2049220, at *4 (rejecting the same argument where the plaintiffs had relied on the same three affidavits); *Rawlings*, 2025 WL 1432278, at *7 (same). Second, the declarants asserted that they considered IDEA litigation complex because IDEA cases allow for "limited discovery and pretrial exchange," which requires attorneys to prepare for "many different potential defenses that could be presented by the respondent." ECF No. 10-2, at 69-70 ¶ 8; *id.* at 79-80 ¶ 21; *id.* at 87-88 ¶ 6. But as the

D.C. Circuit has explained, "the absence of discovery may suggest that IDEA cases are *not* as complex as cases in which discovery is extensive." *Reed*, 843 F.3d at 525 (emphasis added) (rejecting the same argument as "insufficient to demonstrate that IDEA cases involve complex federal litigation"); *see Easterling*, 2026 WL 923784, at *4; *White*, 2025 WL 2049220, at *4; *Rawlings*, 2025 WL 1432278, at *7. The court lacks any basis to second-guess the D.C. Circuit's rejection of the same arguments that the Lattishaws make here.

The Lattishaws next argue that their particular case is as complex as *Merrick*, 316 F. Supp. 3d 498, in which the court concluded that the plaintiffs had offered satisfactory evidence to establish that IDEA cases are complex, *see id.* at 511-15. ECF No. 10, at 10. It is unclear why the Lattishaws seek to analogize their case to the particular facts of *Merrick*, as the court there did not deem the case complex based on its facts. Instead, it found that the plaintiffs' five declarations were "sufficiently detailed to support [the] plaintiffs' position that IDEA cases qualify as 'complex federal litigation' so as to warrant the presumptive application of the [] *Laffey* rates." *Merrick*, 316 F. Supp. 3d at 511. As the court already explained, the old affidavits that the Lattishaws have provided here fail to demonstrate that IDEA litigation is categorically complex. And the Lattishaws' own attorneys make no suggestion in their affidavits that this particular case was complex. *See* ECF No. 10-2, at 1-15. The court thus concludes that the Lattishaws have failed to show either that IDEA litigation is categorically complex or that this case in particular is complex.

*b. Rates IDEA litigators charge and receive from paying clients*

A fee applicant may also "establish the prevailing market rate by providing evidence of the fees charged, and received, by IDEA litigators." *Reed*, 843 F.3d at 521. The Lattishaws raise this argument for the first time in their reply brief. *Compare* ECF No. 10, at 7-10 (arguing only that the Fitzpatrick Matrix sets a reasonable rate because this case qualifies as "complex federal

litigation"), *with* ECF No. 14, at 4 (arguing that the Fitzpatrick Matrix rates are reasonable because the Lattishaws have "proven that attorneys have received fees in line with the rates [they] requested from paying clients in IDEA cases"). "[N]ew arguments made in a reply brief are forfeited." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 n.4 (D.D.C. 2016). In any event, the Lattishaws fail to provide sufficient evidence of the actual fees charged and received by IDEA litigators for comparable work.

The Lattishaws contend that they have established the prevailing market rate by attaching affidavits from attorneys who take paying clients and receive comparable rates in similar cases. *See* ECF No. 14, at 3-4. But of those three attorneys, one does not state the rates she actually receives, *see* ECF No. 10-2, at 74 ¶ 14 (Ms. Savit noting only that she would not take a contingency-fee case unless she could "reasonably expect to be awarded an hourly rate of at least $500," not that she had, in fact, received that fee), and another does not even have paying IDEA clients, *see id.* at 89 ¶ 9 (Ms. Hecht noting that, as of November 2021 when the affidavit was signed, she "ha[d] only non-paying IDEA clients"). That leaves the court with the 2020 affidavit of Mr. Tyrka, who stated generally that "[al]though [his firm] ha[d] historically primarily represented clients who cannot afford representation, the firm has had several clients pay the firm at the [inflation-adjusted] *Laffey* matrix rates directly." ECF No. 10-2, at 77 ¶ 9. He also stated that his firm had settled several cases with the District of Columbia between 2018 and 2021 for rates equal to one of the inflation-adjusted *Laffey* Matrices. *Id.* at 77 ¶¶ 9-13. But Mr. Tyrka's affidavit is also insufficient to establish the Lattishaw's proposed rates as the prevailing market rate for at least two reasons.

First, a law firm's settlements with the District provide poor evidence of market rates because of the varied, unknown factors that go into the District's decision to settle. *See Rooths v.*

*District of Columbia*, 802 F. Supp. 2d 56, 62 (D.D.C. 2011) (explaining that "the amount of fees that the District agrees to pay to an attorney as part of a bulk settlement is not determined by market forces"); *see also Rawlings*, 2025 WL 1432278, at *8 (rejecting the Tyrka declaration in part because he "reached settlement agreements with the District for many of his IDEA cases"). Indeed, elsewhere in his declaration, Mr. Tyrka notes that the District offered to settle his cases at rates far below market value. *See* ECF No. 10-2, at 82 ¶ 31 (noting that, in the ten or fewer instances in which DCPS had sent an offer to resolve an IDEA case, it had "never offered more than $5,000 in fees, and ha[d] repeatedly offered $0 in fees").

Second, even if Mr. Tyrka were able to prove through his affidavit that he received rates equal to the inflation-adjusted *Laffey* Matrix from paying clients in 2020, that would not prove that rates equivalent to the Fitzpatrick Matrix—as the Lattishaws seek here—are prevailing in the market today. The District argues that the sheer fact that Mr. Tyrka's affidavit is from 2020 renders it irrelevant to "what the prevailing market rate for administrative IDEA work is today." ECF No. 12, at 9. The court does not necessarily agree that four years between an affidavit and when the work was performed in this case renders the affidavit categorically irrelevant to prevailing market rates. But the Lattishaws err by simply stating that the District "provides no evidence that the rates have changed dramatically in that time." ECF No. 14, at 3. Indeed, by their own admission, they seek entirely different rates than those that Mr. Tyrka received because, in the intervening period, courts in this district have overwhelmingly shifted to the use of the Fitzpatrick Matrix for complex federal litigation. *Id.* ("[The] Lattishaw[s] do[] not seek fees at the LSI adjusted *Laffey* rate, but rather at the Fitzpatrick rate, which is much lower."); *see White*, 2025 WL 2049220, at *3 n.1 (collecting cases and explaining that "[m]any judges in this district have applied the Fitzpatrick matrix in both IDEA and other cases, even when the plaintiffs ask for the

*Laffey* matrix"). It is entirely reasonable to believe that the prevailing rate paid to IDEA attorneys has changed where the potential for reimbursement under the predominant matrix has substantially changed. The Lattishaws, in offering only one affidavit from an attorney who receives fees from paying clients and whose claimed fees track a matrix that is no longer commonly used in IDEA litigation, have failed to by "recit[e] the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases." *Eley*, 793 F.3d at 101; *see Rawlings*, at *8 (rejecting plaintiff's attempts to establish the Fitzpatrick Matrix rate by using Mr. Tyrka's affidavit because the latter "tracks the *Laffey* Matrix, which the [c]ourt decline[d] to apply" (citation omitted)).

Because the Lattishaws have failed to demonstrate that IDEA cases are categorically complex, that their case is complex, or that actual IDEA litigators routinely charge and receive the hourly rate that the Lattishaws seek, the Lattishaws' requested hourly rate is unreasonable. The court will accordingly join the vast majority of courts in this district and apply 75% of the Fitzpatrick Matrix rate. *See Easterling*, 2026 WL 923784, at *4 (collecting cases and explaining that "courts in this district have overwhelmingly applied [75% of] Fitzpatrick Matrix rates for IDEA litigation").

**B. Expert Fees**

The Lattishaws seek recovery of expert fees under D.C. Code § 38-2571.03(7) for $1,520.20 billed by education advocate Halima Odom and $300 billed by audiologist Dr. Jay Lucker. ECF No. 10, at 13; ECF No. 10-1, at 71-72. In support of the rates billed, the Lattishaws explain that they have "provided sufficient documentation of both [experts'] qualifications and their actual charged rate to enable the Court to determine an appropriate fee." ECF No. 14, at 10. The Lattishaws also attach Dr. Lucker's curriculum vitae and Ms. Odom's

resume, ECF No. 10-2, at 17-51, and they include invoices showing what the two experts billed to the firm in this case, ECF No. 10-1, at 71-72.

The Lattishaws "bear[] the burden of establishing that the experts' rates are reasonable and 'based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.'" *Wright*, 2019 WL 4737699, at *6 (quoting D.C. Code § 38-2571.03(7)(B)). Neither invoice is sufficient to demonstrate prevailing rates in the community. Ms. Odom billed the Lattishaws at five different hourly rates ranging from $40 to $100. ECF No. 10-1, at 71. She does not provide a declaration or affidavit that explains which of these rates, if any, are prevailing market rates for the kind and quality of services she provided. Dr. Lucker also billed his two hours at entirely different rates—$100 per hour and $200 per hour, *id.* at 72—without any affidavit establishing that his rates are standard across the market, or even that he charged his standard rates in this case. Other cases in this district reinforce the point. In *White*, the court found that the plaintiffs had established the reasonableness of the expert's rates where the expert submitted a declaration "establishing that her . . . rate was standard for her work and in the industry," and counsel provided an affidavit explaining that the expert fees were within the jurisdiction's standard range of market rates. 2025 WL 2049220 at *3. In contrast, the Lattishaws provide no evidence of prevailing market rates as to either expert in this case. The Lattishaws instead argue that the court should simply accept the invoices in this case as conclusive evidence of market rates because the rate that the "experts have actually received is the best evidence in the free market . . . of what their reasonable rate actually is." ECF No. 14, at 10. But on that theory, experts could charge any rate because there would be no comparison to their usual rate or to standard rates charged by other experts to serve as a limit.

In another case in this district, the magistrate judge recommended that the court award the plaintiff's counsel the full cost of her expert fees where the experts provided declarations that "'recite[d] the precise fees' that they ha[d] routinely 'received from fee-paying clients'" over the prior several years. *Pryor v. District of Columbia*, No. 18-CV-920, 2018 WL 4782322, at *10 (D.D.C. Sep. 18, 2018) (emphasis omitted) (quoting *Eley*, 793 F. 3d at 101, 104 n.5), *report and recommendation adopted* 2018 WL 4778928 (D.D.C. Oct. 3, 2018). As the court put it, the fact that the experts "ha[d] charged and been paid their rates for several years and ha[d] been called upon as an expert in a number of due process hearings in the District of Columbia, show[ed] that [their] expert rates reflect 'what the market will bear'—that is, the prevailing rate—for the services of the kind and quality they offer." *Id.* (internal quotations omitted). In contrast, the Lattishaws present no evidence of the rates that either of their experts have received for similar work in *other* cases in this district. Instead, they rely solely on the rates that the experts charged in *this* case. Absent any evidence that the charged rates reflect prevailing rates in this district, the court cannot award the costs of expert fees to the Lattishaws. *See Wright*, 2019 WL 4737699, at *7 (denying the plaintiffs' request for expert fees where the plaintiffs "suppl[ied] [the expert's] resume but provide[d] no further supporting documentation to support that [the expert's] rates '[were] based on the rates prevailing in the community' for other experts providing similar services in similar cases" (quoting D.C. Code § 38-2571.03(7)(B)); *see also Lynn v. District of Columbia*, No. 23-CV-2648, 2024 WL 3967286, at *4 (D.D.C. Aug. 27, 2024) (denying the plaintiff's request for expert fees where they "failed to provide any evidence whatsoever supporting the reasonableness of the expert's fees in [the] case").

## IV. CONCLUSION

For the foregoing reasons, is hereby **ORDERED** that Plaintiffs' Motion for Attorney's Fees, ECF No. 10, is **GRANTED** in part and **DENIED** in part. It is further **ORDERED** that, on or before October 30, 2026, the parties shall file a proposed order providing the amount of fees to which Plaintiffs are entitled, consistent with this court's opinion, along with supporting documentation for the calculation.

**SO ORDERED.**

LOREN L. ALIKHAN
United States District Judge

Date: September 30, 2026